UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:02 CV 125 |
| | ) | (arising from 2:99 CR 86) |
| CHARLES SCOTT, | ) | |
|     Defendant. | ) | |

## MEMORANDUM and ORDER

On July 15, 2005, this court denied defendant Charles Scott's motion to "Vacate, Set Aside, or Correct Sentence" pursuant to 28 U.S.C. § 2255, and ordered that the case be dismissed with prejudice. Dissatisfied with this result, Scott timely filed a FED.R.CIV.P. 59(e) motion for reconsideration of the court's June 15 order. The court will now address the merits of Scott's RULE 59(e) motion.

**I. STANDARD OF REVIEW**

RULE 59(e) permits parties to file, within ten days of the entry of a judgment, a motion to reconsider that judgment. FED.R.CIV.P. 59(e). Motions for reconsideration under this RULE are ultimately designed "to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). Therefore, such motions "must *clearly establish* either a manifest error of law or fact or must present newly discovered evidence" in order to be successful. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (quoting *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)) (emphasis added). Accordingly, a RULE 59(e) motion is not appropriately used for the purpose of

rehashing old arguments or for presenting new arguments "that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir. 1996).

## II. ANALYSIS

Scott's RULE 59(e) motion, for the most part, simply rehashes old arguments, emphasizing issues and points of law that he believes the court wrongly decided or interpreted. Scott may not, and need not agree with this court's original determination on the issues presented in his § 2255 motion, but a motion for reconsideration pursuant to FED.R.CIV.P. 59(e) is not the appropriate vehicle for airing his difference of opinion; and, in any event, a mere rephrasing of old arguments does not meet the stringent standard required for the success of such motions. Accordingly, the court will not review or reconsider most of the issues presented in Scott's RULE 59(e) motion.[1] The court will review however, for clarification and explanatory purposes, the issue as to whether Scott's attorney rendered ineffective assistance when failing to object to the language of the court's jury instruction No. 20, which Scott claims constructively

---

[1] One of the issues this court will not revisit is whether Scott's trial attorney rendered ineffective assistance in failing to call Victoria Buggs as a witness on Scott's behalf; this court has already thoroughly addressed the issue in its July 15 order dismissing Scott's § 2255 motion. However, the court wishes to note here that although it believed Victoria Buggs to be Scott's mother – and stated as much in its July 15 order – the court was mistaken. In his RULE 59(e) motion, Scott makes it quite clear that Ms. Buggs is not his mother.

amended the Hobbs Act, 18 U.S.C. § 1951, violations[2] charged in Counts 2, 4 and 8 of the indictment.[3]

To succeed on a claim of ineffective assistance, Scott must demonstrate: (1) that his counsel's performance was unreasonably deficient; and, (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As the *Strickland* standard is formulated in the conjunctive, Scott must make the requisite showing on *both* elements; failure to prove either deficient conduct or prejudice invalidates an ineffective assistance claim, *see Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002) ("A failure to establish either [*Strickland*] prong results in a denial of the ineffective assistance of counsel claim."). When considering whether an attorney's conduct was unreasonably deficient under the first prong of the *Strickland* test, a court must operate under "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and treat counsel's performance with high deference. *Strickland*, 466 U.S. at 689; *see also Williams v.*

---

[2] "The Hobbs Act prohibits any robbery or extortion or attempt or conspiracy to rob or extort that 'in any way or degree obstructs, delays or affects commerce or the movement of any article or commodity in commerce.'" *United States v. Bailey*, 227 F.3d 792, 797 (7th Cir. 2000) (quoting 18 U.S.C. § 1951(a)); *accord United States v. Marrero*, 299 F.3d 653, 654 (7th Cir. 2002) ("The Hobbs Act criminalizes robberies that obstruct or otherwise affect interstate commerce.").

[3] Scott presented this issue in an amendment to his § 2255 motion filed on October 29, 2002. (*See* Scott's Am. to § 2255 motion, at docket # 242 in Cause No. 2:99 CR 86). This court did not directly or explicitly explain its decision on this particular issue in its order denying Scott's § 2255 motion.

*Washington*, 59 F.3d 673, 679 (7th Cir. 1995) (The first prong of *Strickland* "contemplates deference to strategic decision-making."). In order to prevail on the first prong of the *Strickland* test, a defendant must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. With regard to the second prong, the court will only disturb a criminal conviction if "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id*. at 694; *see also Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."); *Gibbs v. VanNatta*, 329 F.3d 582, 584 (7th Cir. 2003) ("In order to demonstrate that his federal constitutional right to effective assistance of counsel was violated, a defendant must show that effective assistance would have given him a reasonable shot at acquittal.").

As already noted above, Scott claims his counsel rendered ineffective assistance by failing to object to this court's jury instruction No. 20. (*See* Scott's Am. to § 2255 Mot., at docket # 242 in Cause No. 2:99 CR 86 [hereinafter Scott's § 2255 Am]). The court's jury instruction No. 20 defines the word "property" as used in the elements instruction on the Hobbs Act violations (charged in Counts 2, 4, and 8 of the indictment),[4] and

---

[4] The elements instruction on the Hobbs Act violations states, in pertinent part:

To sustain the charge of robbery which effected interstate commerce, as

4

states: "The term 'property' includes United States currency and firearms."(Court's Instruction No. 20, at docket # 81 in Cause No. 2:99 CR 86). Scott takes issue with appearance of the term "firearms" in the instruction, noting that the term did *not* likewise appear in the indictment, (*see* Scott's § 2255 Am., at 1), which simply charged him with "unlawfully tak[ing] and obtain[ing] property consisting of *United States currency . . .*," (Indictment, at Counts 2, 4, 8) (emphasis added). Scott believes that inclusion of the word "firearms" within the jury instruction on Counts 2, 4, and 8 impermissibly broadens or constructively amends the indictment, and therefore his trial attorney should have objected to the instruction. (*See* Scott's § 2255 Am., at 1).

A constructive amendment to an indictment results when the court and/or government broadens "the possible bases for conviction beyond those presented by the grand jury." *United States v. Cusimano*, 148 F.3d 824, 829 (7th Cir. 1998). Such amendments to an indictment are prohibited by the Fifth Amendment which "requires that the allegations in the indictment and the proof at trial match in order to insure that the defendant is not subject to a second prosecution, and to give the defendant reasonable notice so that he may prepare a defense." *United States v. Trennell*, 290 F.3d

---

charged in Counts 2, 4, [ ], and 8 of the indictment, the government must prove the following propositions:

> FIRST:   that the defendant to whom you are giving consideration knowingly obtained money or *property* from or in the presence of the employees of the business specified . . . .

(Court's Instruction No. 18, at docket # 81 in Cause No. 2:99 CR 86) (emphasis added).

5

881, 888 (2002) (internal quotation marks and citation omitted). As it relates to jury instructions, constructive amendments occur where the language of the instruction materially alters the theory of criminal liability charged in the grand jury's indictment, thus creating a likelihood that the defendant may have been convicted of an offense other than that charged in the indictment. *United States v. Muelbl*, 739 F.2d 1175, 1181 (7th Cir. 1984); *see also United States v. Williams*, 798 F.2d 1024, 1033 (7th Cir. 1986) ("The general rule in this area is that the trial court cannot amend the indictment at the instruction stage by eliminating or changing an essential or material element of the crime."); *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986) ("A constructive amendment occurs when the terms of an indictment are in effect altered by the presentation of . . . jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.").

Assuming simply for the sake of argument that the failure to object to use of the word "firearms" in this court's instruction on Counts 2, 4, and 8 constitutes constitutionally deficient lawyering, Scott must still prove prejudice to succeed on his ineffective assistance claim, *see Rastafari*, 278 F.3d at 688, and this he cannot do. The indictment (at Counts 2, 4, and 8) charged Scott with taking "United States Currency" during the (armed) robberies of several businesses engaged in interstate commerce. (*See* Indictment, at Counts 2, 4, 8). The evidence that currency was taken from each robbery was insurmountable and uncontroverted. Multiple eyewitnesses from each incident

6

testified to observing several men wearing disguises take money during each of the robberies, and, more importantly, neither Scott nor his co-defendants *ever* disputed the fact that currency was obtained from each and every robbery committed.[5] Therefore, inclusion of the word "firearms" in the court's jury instruction No. 20 clearly did not impact the jury's findings that the robberies charged in the indictment did, in fact, occur.

Another indication that the word "firearms" did not in any way affect the verdicts rendered comes by way of examining the trial testimony. The only reference to stolen firearms was elicited from Pedro Irizarry and Terry Chambers, both eyewitnesses to the robbery at an establishment called The Store. Irizarry and Chambers spent most of their time on the stand describing the assailants. The portion of Irizarry's testimony dedicated to the stolen firearm occupies only 14 lines of the five volume trial transcript. (*See* Tr. T. Vol. 3, at 13.15-14.03.) A reader can find Chambers' testimony on this subject contained in a mere twelve lines. (*See* Tr. T. Vol. 3, at 45.17-46.03.) When one considers these fleeting references in the context of a twenty-witness trial, stretching in excess of one week, with testimony filling five volumes, it is clear the jury made its findings of the existence of the robberies from the unassailable evidence of stolen currency, not the

---

[5] As an aside, the court notes that Scott's trial strategy was to (impliedly) admit the occurrence of the robberies, and urge that there was reasonable doubt as to the identity of the perpetrators. Thus, as just pointed out above, the fact that currency was obtained from every robbery was never disputed by anyone (nor could it have been given the evidence). Scott and his co-defendants also did not dispute the fact that other items (i.e., firearms) were taken from the businesses. Ultimately, it was irrelevant as to what items the robbers obtained from the robberies. Thus, it is unsurprising that Scott's attorney did not object to the inclusion of the term "firearms" in the court's jury instruction No. 20.

7

ephemeral reference to stolen firearms. In other words, there existed no risk that the act of enumerating other items taken in the robberies (i.e., firearms) created a likelihood that Scott may have been convicted of an offense other than that charged in the indictment. Therefore, Scott's claim of ineffective assistance on this issue must fail.

## III. CONCLUSION

Accordingly, because much of Scott's RULE 59(e) motion merely rehashes old arguments already thoroughly discussed and decided, and because a review of the issue not directly addressed in this court's order denying Scott's § 2255 motion neither demonstrates a manifest error of law nor fact requiring reconsideration, Scott's RULE 59(e) motion (docket # 10) is hereby **DENIED**.

**SO ORDERED.**

**Enter**: August 23, 2025

\_\_\_\_s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT